Patricia A. KARNES, Plaintiff,

v.

Marvin RUNYON, Postmaster General,
United States Postal Service,
Defendant.

No. C-1-94-426.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 27, 1995.

Susan Sauter, Cincinnati, OH, for plaintiff.

Jan Martin Holtzman, Department of Justice, Cincinnati, OH, Jan M. Holtzman, U.S. Attorney's Office, Cincinnati, OH, Helen A. Nicholas, Law Dept., Philadelphia, PA, for defendant.

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Postmaster General of the United States Postal Service's (hereinafter "USPS") Motion for Summary Judgment (doc. 11), Plaintiff Patricia Karnes' Memorandum in Opposition and Motion for Designation as a "Mixed Motives" Case (doc. 17), USPS's reply and memorandum in opposition (doc. 26), and Ms. Karnes reply (doc. 30).

### BACKGROUND

Ms. Karnes is employed at the Bulk Mail Center ("BMC") of the USPS in Sharonville. Ms. Karnes has been a career employee at BMC for nearly ten years. She was originally hired full-time as a Keyer Clerk. Ms. Karnes performed her duties well and received numerous commendations for the quality of her work.

In February 1992, Ms. Karnes was diagnosed with bi-lateral cubital tunnel syndrome as a result of her work for the USPS. About the same time, Ms. Karnes discovered that she was pregnant. Her doctor attempted to treat the injury without surgery by placing a splint on her arms and restricting her work hours and duties. These therapies failed to solve the problem. As a result, Ms. Karnes underwent surgery for her condition in June 1992.

In July 1992, Ms. Karnes returned to work with further work restrictions including no repetitive movement. This excluded Ms. Karnes from her job as a Keyer Clerk. Although Ms. Karnes concedes that USPS accommodated her both prior to and just after her surgery, (Karnes Dep. at 44, 47) she claims that she was harassed by supervisors and other employees due to her work restrictions and her pregnancy. In August 1992, Ms. Karnes gave birth to her child two months premature. Consequently, Ms. Karnes took a year of maternity leave.

On August 10, 1993, Ms. Karnes attempted to return to work at the Postal Service. Ms. Karnes' supervisor, Wayne Keck, informed her that there were no positions available that fit her work restrictions. Ms. Karnes, believing that other employees with similar work restrictions had been accommodated, filed a request for EEO counselling on August 16, 1993.

Ten months later, USPS returned Ms. Karnes to work. USPS claims that it created a position to fit Ms. Karnes' work restrictions. Ms. Karnes argues that this "new" position is exactly what she did when she returned to work for a month following surgery before her maternity leave. Ms. Karnes received worker's compensation benefits between August 1993 and April 1994.

Ms. Karnes' complaint raises claims over three distinct time periods. First, Ms. Karnes claims that USPS discriminated against her, and she claims USPS employees harassed her during the summer of 1992 prior to her maternity leave.[1] Second, she claims that the USPS refused to accommo-

---

1. For example, Count II states that "Upon returning to work in 1992, and upon requesting to return to work in 1993, Defendant discriminated against the plaintiff on the basis of her handicap by treating her differently than it had treated her before; treating her differently that other non-handicapped employees; and engaging in harassing conduct on account of her disability."

Ms. Karnes, however, states in her brief that she is not seeking recovery for USPS's wrongdoing prior to 1993. See Document 17 at *14.

date her disability when she sought to return to work in the summer of 1993. She believes that USPS refused to accommodate her because of her maternity leave and sought to discriminate against her based upon her disability. Third, Ms. Karnes claims that when she returned to work, USPS retaliated against her by giving her a position inconsistent with her seniority.

Ms. Karnes' claims of disability discrimination arise under the Rehabilitation Act of 1973. 29 U.S.C. § 701 et seq. Her claims of gender and maternity discrimination arise under Title VII. 42 U.S.C. § 2000e et seq. She seeks all relief available under the Title VII and the Rehabilitation Act including compensatory damages and injunctive relief. Specifically, Ms. Karnes seeks 100% of her back pay, full benefit of her seniority including "better" days off and hours, and an injunction precluding certain action by USPS in the future. USPS moved for summary judgment of Ms. Karnes claims based on a variety of theories.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . ., against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321, 106 S.Ct. at 2552; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir.1992). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " Guarino, 980 F.2d at 405 (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

USPS argues that any claims arising out of events prior to Ms. Karnes' return from maternity leave are barred because she failed to exhaust her administrative remedies. Title VII requires that a federal employee alleging discrimination exhaust her administrative remedies before she can file a lawsuit. Brown v. General Services Administration, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). The Rehabilitation Act contains a similar exhaustion requirement. Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir.1992).

The initial allegations of discrimination and harassment occurred in the summer of 1992. Ms. Karnes filed her only EEO complaint on October 12, 1993. Ms. Karnes offers no argument that these USPS actions amount to a "continuing violation." See id.

at 677 (continuing violation theory allows for challenge of ongoing continuous discrimination if at least one of the discriminatory acts occurred during the time period). The Court finds that Ms. Karnes is barred from bringing claims for events prior to August 1993 for failing to exhaust administrative remedies. Accordingly, the Court GRANTS USPS's Motion for Summary Judgment as to any claims prior to August 1993.

USPS argues that Ms. Karnes' retaliation claims are also barred. Ms. Karnes added these charges in her amended complaint. The events leading to the charges of retaliation did not occur until USPS offered Ms. Karnes a new position in the Spring of 1994. Ms. Karnes argues that just because she failed to mention "harassment" in her EEO complaint should not preclude her from bringing the charge in district court. The issue raised by USPS's motion, however, is whether the retaliation claim, which occurred after the EEO charge was filed are barred since Ms. Karnes never filed a separate EEO charge for these later allegations.

■ The Court finds that Ms. Karnes' failure to bring an additional EEO complaint does not bar the retaliation claim. The Sixth Circuit has stated that an EEO complaint "should be liberally construed to encompass all charges 'reasonably expected to grow out of the charge of discrimination.'" *Haithcock*, 958 F.2d at 675. Ms. Karnes' retaliation claims reasonably grew out of her initial discrimination charge. *See Gottlieb v. Tulane*, 809 F.2d 278, 284 (5th Cir.1987) (holding that plaintiff need not file an additional EEO complaint for retaliation claim that arises from earlier discrimination charge).

## FECA AND DISCRIMINATION CLAIMS

■ The Federal Employee's Compensation Act ("FECA") provides postal employees a means of recovering lost wages and medical expenses for injuries sustained in the perfor-

mance of their duties. *Miller v. Bolger*, 802 F.2d 660, 662 (3rd Cir.1986). An employee with dependents receives 75% of their pay under FECA. Receipt of compensation under FECA, however, bars recovery of certain other relief. 5 U.S.C. § 8116(a).[2] Ms. Karnes received compensation under FECA from the time she attempted to return to work in August 1993 until April 1994 when USPS reinstated her. USPS argues that FECA precludes recovery by Ms. Karnes for her discrimination claims.

The question is whether the FECA's limitation applies to claims for relief under Title VII and the Rehabilitation Act. USPS relies on *Alexander v. Frank*, 777 F.Supp. 516 (N.D.Tex.1991) for the proposition that FECA bars recovery of damages on any discrimination claims. In *Alexander*, the court stated that it had no authority to award the plaintiff a remedy since he was already receiving FECA compensation for the same period of time. The *Alexander* court held that FECA is the "exclusive and preemptive remed[y] for all work-related injuries...." *Id.* at 523. The court concluded that FECA forbids courts from awarding any damages beyond those provided by FECA. *Id.* at 524.

We disagree with the *Alexander* court and find that FECA does not preclude recovery under Title VII and the Rehabilitation Act. The approach of the *Alexander* court is inconsistent with the Sixth Circuit's view of the term "injury" under FECA. *DeFord v. Secretary of Labor*, 700 F.2d 281 (6th Cir.1983). In *DeFord*, the plaintiff sued for damages, including medical expenses, mental distress and lost wages resulting from retaliation he received due to his cooperation with a Nuclear Regulatory Commission investigation. *Id.* at 286. The Sixth Circuit held that FECA did not preclude recovery of compensatory damages under 42 U.S.C. § 5851.[3] *Id.* at 290. The Sixth Circuit stated that FECA was the exclusive remedy for the injuries covered by the Act. FECA provides com-

---

**2.** 5 U.S.C. § 8116(a) states:

While an employee is receiving compensation under this subchapter, or if he has been paid a lump sum in commutation of installment payments until the expiration of the period during which the installment payments would have continued, he may not receive sal-

ary, pay, or remuneration of any type from the United States....

**3.** 42 U.S.C. § 5851 prohibits employers from discriminating against employees who participate in an NRC investigation.

pensation for "personal injury" which is defined as "injury by accident" or by "disease proximately caused by the employment." *Id.* (quoting 5 U.S.C. § 8101(5)). The Sixth Circuit held that injuries due to discrimination, mental distress, or loss of employment are not injuries covered by FECA. *Id.*

 The better view seems to be that FECA was designed as a substitute for common law tort actions only. *See DeFord,* at 290 (stating that FECA is merely a worker's compensation act); *Miller v. Bolger,* 802 F.2d 660, 663 (3rd Cir.1986) (noting that the legislative history stated that exclusivity of remedy is an aspect of all worker's compensation laws). The Third Circuit noted that when Congress amended Title VII to add federal employees, it made no mention of FECA preempting recovery under Title VII. *Id.* at 664. Furthermore, the fact that FECA and Title VII provide for distinctive types of relief is further evidence that FECA does not preclude recovery. *Id.* at 665. The Court finds that injuries caused by discrimination in violation of the Rehabilitation Act or Title VII are not covered by FECA. Therefore, FECA does not preclude recovery for injuries caused by illegal discrimination.

## PATTERN OR PRACTICE OF PREGNANCY DISCRIMINATION

 Ms. Karnes claims that the USPS has engaged in a pattern of discrimination and harassment of both pregnant and disabled employees. USPS argues that Ms. Karnes cannot establish a practice or pattern of discrimination. The Court finds that Ms. Karnes has not established a pattern or practice on the part of the USPS to discriminate against pregnant employees. Ms. Karnes' only evidence of a discriminatory pattern against pregnant employees is the depositions of Charlotte Pelletier and Jacqueline Fisher. Neither witness has personal knowledge of the facts to which they testified. The double hearsay statements by witnesses with no personal knowledge of the events at

issue regarding two possible examples of discrimination is not enough to establish a practice or pattern. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977) (stating that plaintiff must show more than "isolated" or "sporadic discriminatory acts" to establish pattern or practice).

On the other hand, there does appear to be ample evidence of a pattern of discrimination at the BMC against handicapped employees. USPS argues that much of Ms. Karnes' evidence of discrimination against the disability is inadmissible and inadequate under Rule 56(e). The Court declines to rule on the admissibility of any specific documents appended to Ms. Karnes' brief. The Court, however, finds that enough of the material is relevant and possibly admissible to support an inference that a pattern of discrimination against the disabled exists at the BMC.

## PRIMA FACIE CASE OF DISABILITY DISCRIMINATION

USPS argues that Ms. Karnes has failed to prove a *prima facie* case of disability discrimination because she cannot show that she is "an otherwise qualified handicapped person." *Harris v. Adams,* 873 F.2d 929, 932 (6th Cir.1989). USPS contends that since Ms. Karnes cannot return to her position as a Keyer Clerk she is not "otherwise qualified." Ms. Karnes argues that the USPS refused to return her to the position of Vehicle Operations Assistant ("VOA") which she held prior to her maternity leave.[4]

 The *prima facie* case for a claim of handicapped discrimination is a modified version of the test for racial discrimination enunciated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Harris,* 873 F.2d at 932. A plaintiff must show that she is an otherwise qualified handicapped individual who has been discriminated against solely on the basis of her handicap. *Id.* A person is "otherwise qualified" if she

---

4. The record before the Court, however, is devoid of any evidence that Ms. Karnes ever held that position. In fact, Ms. Karnes states that she was not a VOA during her pre-maternity leave restrictions.

Q. "And, in fact, you were detailed in there, is that correct?"
A "Not as a VOA, just to help the supervisor with paperwork."
(Karnes Dep. at 93).

is a "handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." *Tuck v. HCA Health Services of Tennessee,* 7 F.3d 465, 471 (6th Cir.1993) (quoting 45 C.F.R. § 84.3(k)). It is undisputed that Ms. Karnes is a handicapped individual and that USPS did not return her to work because of her handicap. Moreover, Ms. Karnes does not dispute that she is now unable to perform the duties of a keyer clerk—the position for which she was hired.

USPS asserts that the Rehabilitation Act does not require it to create a position for Ms. Karnes when she cannot perform the essential functions of the position for which she was hired. Although Ms. Karnes can no longer perform the duties of a Keyer Clerk, she did work for at least a month after she became disabled prior to her maternity leave. The question becomes what are the "essential functions of the *job in question.*"

The determination of the essential elements of a job and whether reasonable accommodation is possible are "primarily factual issues." *Id.* (citing *Hall v. United States Postal Service,* 857 F.2d 1073 (6th Cir.1988). Two district courts have held that a plaintiff need not be qualified to perform the duties of the position he was originally hired for in order to prove that he was "otherwise qualified." *Valdez v. Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M.1994); *Taylor v. Garrett,* 820 F.Supp. 933 (E.D.Pa.1993). Instead, the plaintiff can show that he is "otherwise qualified" if he can perform the duties of the light duty position to which he was reassigned. *Valdez,* 875 F.Supp. at 744-45. "[W]hen an employee has been offered light-duty work—work he must accept in order to maintain workers' compensation eligibility—and that employee challenges the conditions of, and the reasons for his separation from, such light-duty work, the relevant inquiry must be his qualifications to perform that work in which he was engaged when the discrimination occurred." *Taylor,* 820 F.Supp. at 938. The Court agrees that the position Ms. Karnes held at the time of the alleged discrimination is more appropriate for determination whether she "can perform the essential functions of the job in question." Since USPS has not challenged Ms. Karnes ability to perform the duties she had under her post-surgery restrictions, it cannot show that Ms. Karnes is not "otherwise qualified."

USPS counters that at the time of the alleged discrimination (*i.e.* when Ms. Karnes returned from maternity leave), Ms. Karnes did not have a position. USPS's position is illogical. Under this argument, any claim of disability discrimination following maternity leave would be futile since the plaintiff would not have a position prior to the discriminatory act for which she would be engaged. It makes more sense to consider the position held by the plaintiff prior to the leave.

## CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part the Defendant's Motion for Summary Judgment. The remaining issues for trial are:

(1) Whether the USPS has engaged in a practice or pattern of discriminating against the handicapped;

(2) Whether the USPS discriminated against Ms. Karnes on the basis of her disability or her pregnancy;

(3) Whether the USPS retaliated against Ms. Karnes because of her prior complaints of discrimination.

(4) If Ms. Karnes succeeds in establishing liability on any of the above claims, the damages to which she is entitled.

SO ORDERED.