**Gilford M. HILL, Plaintiff,**

v.

**Joseph HARPER, Jr., Sheriff, Defendant.**

**Civil Action No. 3:96cv760.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 22, 1998.

Carolyn Pullin Carpenter, Darrel Tillar Mason, Margaret Winslow Reed, Carpenter & Woodward, PLC, Richmond, VA, Leslie Anne Coughenour, Carpenter, Woodward & Elder, Richmond, VA, for Plaintiff.

William Fisher Etherington, Beale, Balfour, Davidson, Etherington & Parker, Richmond, VA, for Defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff Gilford M. Hill brings this action for unlawful employment discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* A bench trial was held and the matter was taken under advisement. Pursuant to Fed. R.Civ.P. 52, the following constitutes the Court's findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The parties have submitted a joint stipulation of facts which addresses most of the relevant factual matters.

1. Plaintiff Gilford M. Hill ("Hill") was employed by the City of Petersburg Sheriff's Department from April 1, 1977 until his resignation effective March 23, 1993.

2. Defendant Joseph Harper, Jr. ("Sheriff Harper") is and at all relevant times was the Sheriff of the City of Petersburg and is an employer within the meaning of 42 U.S.C. § 12134 *et seq.*

3. At the time of Hill's resignation, he held the position of Deputy Sheriff and worked in the City of Petersburg jail ("the jail"). From late 1977 to early 1979 and from 1987 to 1990, Hill worked as a deputy in the jail. From 1979 to 1987, he worked as a desk sergeant.

4. A jail deputy is required to rotate through five different duty posts in the jail—control room, receiving area, lockup, second floor, and third floor.

5. The jail has been understaffed for several years. Ideally, there should be seven deputies working each shift—two male deputies on the third floor, one male and one female deputy on the second floor, one deputy in lockup, one deputy in the receiving area, and one deputy in the control room.

6. The control room is required to be staffed three shifts per day and cannot be left unstaffed at any time during the day. If the deputy assigned to the control room is required to leave the control room for any reason during the shift, he must be relieved by direct order from his desk sergeant and another deputy is assigned to cover the control room.

7. Much like the other deputies, the deputy assigned to the control room would be required to leave the control room upon a

direct order from his supervisor to respond to an emergency in the jail.

8. In 1990, Hill's ability to stand for a prolonged period, walk, and climb stairs was severely and permanently impaired due to circulatory problems.

9. In 1991, Hill's ability to climb stairs, walk at a fast pace, and run was severely and permanently impaired due to circulatory problems.

10. Due to his disability, Captain Arthur Snyder, jail administrator, placed Hill in the control room of the jail.

11. Hill performed the control room job satisfactorily.

12. In February of 1993, Hill received a promotion to Senior Deputy, although he received no increase in pay.

13. During the early part of 1993, Deputy John Roeber requested "light duty" status. At about the same time, Deputy Gerald Farmer requested a transfer to the jail farm facility or reassignment to "light duty" status because of a knee injury.

14. On or about March 5, 1993, Sheriff Harper issued a memorandum to all jail deputies stating that "Light Duty Status" for all personnel would no longer be honored and requiring each deputy to perform duties in all areas of the workplace.

15. Hill could not perform all of the duties of a jail deputy and therefore, Hill was unable to continue working for Sheriff Harper.

16. Based on Sheriff Harper's March 5, 1993 memo, Hill could be fired for not being able to perform all duties of a jail deputy.

17. Faced with the probability of termination, Hill tendered his resignation on March 23, 1993, effective on that date.

18. Hill suffers from a disability as defined by the ADA.

19. At no time after March 5, 1993 has Sheriff Harper provided Hill with an individual assessment in order to accommodate his disability.

20. Hill is properly before this Court procedurally.

21. Hill has not worked since leaving the City of Petersburg Sheriff's Department and has not sought employment since August 20, 1994.

22. No vacancies for jobs for which Hill may have been qualified existed in March of 1993 in the City of Petersburg Sheriff's Department.

23. At the time of Hill's resignation, his annual salary was $27,117.00, making his monthly salary $2,260.00.

24. Employees of Hill's classification with the City of Petersburg Sheriff's Department were eligible to work at least until they reached the age of sixty-five (65) years.

25. Hill began receiving reduced retirement benefits from the Virginia Retirement System effective April 1993 at the rate of $619.00 per month. These benefits have increased as a result of cost of living adjustments.

26. Hill received a total of $3,250.00 in unemployment benefits in 1993 and 1994. He will not receive any additional unemployment benefits as a result of the loss of his position with the City of Petersburg Sheriff's Department.

27. At the time of his resignation, Hill was provided with health and life insurance at a value of $237.00 per year.

28. In December of 1993, deputies received a 3% raise; in December of 1994, deputies received a 2.25% raise; in December of 1995, deputies received a 2.25% raise; in December of 1996, deputies received a 4.35% raise; and in December of 1997, deputies received a 4% raise.

29. The number of deputies that Sheriff Harper is authorized to employ is set by the Compensation Board on the basis of one per every 2000 prisoners.

30. Deputies' wage rates are set by the Compensation Board.

31. On May 3, 1993, Hill filed a timely charge of disability discrimination in employment with the Equal Employment Opportunity Commission ("EEOC").

32. On June 20, 1996, Hill was issued a Right to Sue letter.

33. On October 18, 1996, Hill filed a Complaint with this Court alleging unlawful employment discrimination in violation of the ADA.

## II. CONCLUSIONS OF LAW

To establish a cause of action under the ADA, Hill must demonstrate that (1) he has or had a disability;[1] (2) he was otherwise qualified for the job in question; and (3) he was discharged solely because of the disability. *See Halperin v. Abacus Technology Corp.*, 128 F.3d 191 (4th Cir.1997); *Doe v. University of Maryland Medical Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995). The parties do not dispute that Hill suffered from a disability or that he was forced to resign because of his disability. *See* Stipulations ¶¶ 11, 14. Therefore, the Court will focus on the second prong of the *prima facie* test— whether Hill was "otherwise qualified" for the position in question.

The ADA protects only "qualified individuals" from discrimination based on their disability. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Ultimately, Hill bears the burden of establishing his ability to perform the "essential functions" of his position with "reasonable accommodation". *See Tyndall v. National Educ. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir.1994).

■ As a preliminary matter, the Court rejects Hill's argument that the proper focus of the inquiry is whether he was qualified to perform the work in which he was engaged when the alleged discrimination occurred, i.e. control room duty. *Taylor v. Garrett*, 820 F.Supp. 933 (E.D.Pa.1993), and *Karnes v. Runyon*, 912 F.Supp. 280 (S.D.Ohio 1995), cited by Hill in support of his argument, are inapposite. In both *Taylor* and *Karnes*, the respective courts found that the "essential functions" of the "light duty" jobs to which the aggrieved employees had been reassigned after their disabling injuries differed from the "essential functions" of the positions for which each employee had been originally hired; thus, the courts held that the proper inquiry would be to look at the "essential functions" of the "light duty" positions in order to determine whether the employees were "qualified individuals with a disability" under the ADA. In the instant case, however, Sheriff Harper maintains that there were no permanent "light duty" positions at the jail, let alone a vacant one into which he could transfer Hill, and Hill has not adduced any evidence to the contrary. Although the control room was considered a plum assignment because of the lack of inmate contact, it was not classified as a "light duty" job. *See* Pl.'s Proposed Findings of Fact ¶ 30. In fact, Hill concedes that "it is a position carrying with it all of the responsibilities of a deputy." *Id.* Thus, for purposes of this case, the relevant inquiry is whether Hill was qualified to perform the "essential functions" of the job of a jail deputy.

### A. *"Essential Functions"*

■ The phrase "essential functions" means "the basic, fundamental duties of the job the person with a disability holds or desires." 29 C.F.R. § 1630.2(N). Determining whether a function is essential to the job is primarily fact-based. *See Hall v. U.S. Postal Service*, 857 F.2d 1073, 1079 (6th Cir. 1988). Relevant factors include, but are not limited to, the following: (1) the employer's judgment as to what functions of a job are essential; (2) the number of employees available among whom the performance of that function can be distributed; (3) the amount of time an employee spends on the job performing that function; (4) the consequences of the employee not performing that function; (5) the work experience of prior holders of that position; and/or (6) the current work experience of those in similar jobs. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n).

---

1. The ADA defines "disability" as:
   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.
   42 U.S.C. § 12102(2).

■ In the instant case, Sheriff Harper contends, and Hill does not dispute, that an "essential function" of the position of jail deputy is the ability to rotate through various duty posts at the jail. *See* Def.'s Proposed Findings of Fact ¶¶ 5, 6; Pl.'s Proposed Findings of Fact ¶ 7. Specifically, for any given shift, a jail deputy will be assigned to either the second floor, the third floor, the lockup, the receiving area, or the control room. Each duty post involves varying degrees of physical activity, including standing for long periods of time and walking. The control room post itself requires standing for ninety percent of the shift and sitting for just ten percent. *See* Pl.'s Ex. 17 at 2. More importantly, every jail deputy, including the deputy assigned to the control room for that shift, must be capable of responding to emergencies in the jail. The position of jail deputy therefore clearly requires that an individual exhibit a wide range of physical capabilities from standing for long periods of time to wrestling with a prisoner. Obviously, an individual whose ability to stand, walk, or run is severely impaired cannot perform these "essential functions" without some sort of accommodation.

Since 1990, Hill has been unable to stand for prolonged periods of time, climb stairs, walk at a fast pace, or run due to circulatory problems. *See* Stipulations ¶¶ 5, 6. As a result, Hill acknowledges that he is unable to work any post other than the control room without accommodation. *See* Pl.'s Proposed Findings of Fact ¶ 16. Thus, it is clear that Hill cannot perform the "essential functions" of the position of jail deputy without some sort of accommodation.

## B. "Reasonable Accommodation"[2]

■ Like the determination of whether a task is an "essential function" of a job, the decision of whether "reasonable accommodation" would enable a disabled person to perform the "essential function" of a job is also a fact-specific inquiry. *See Hall*, 857 F.2d at 1079. Generally, an employer must arrange for "reasonable accommodation" unless doing so imposes an "undue hardship." *See* 42 U.S.C. § 12112(b)(5). An accommodation is considered unreasonable if it requires elimination of an "essential function." *See Hall*, 857 F.2d at 1078.

■ In the instant case, Hill suggests that Sheriff Harper could have reasonably accommodated his disability by placing him in the control room on a permanent basis. In support of this contention, Hill points to the fact that Sheriff Harper, through one of his agents, did just that for three years before his eventual resignation. *See* Stipulation ¶ 7; Pl.'s Proposed Findings of Fact ¶¶ 9–16; Def.'s Proposed Findings of Fact ¶ 9. However, because this accommodation effectively eliminated the "essential function" of being able to rotate through the various duty posts, the Court finds that it does not constitute a "reasonable accommodation". Thus, irrespective of the length of time Hill previously worked in the control room, Sheriff Harper was not required to continue this accommodation. *See, e.g., Champ v. Baltimore County*, 884 F.Supp. 991 (D.Md.1995), *aff'd*, 91 F.3d 129 (4th Cir.1996). Having failed to identify any other possible "reasonable accommodations", the Court finds that Hill has not successfully stated a *prima facie* case of employment discrimination under the ADA.

■ Although irrelevant at this stage of the proceedings, the Court must address one final issue. Under the ADA, once an employer is informed that an individual with a disability needs some sort of accommodation, the employer is obligated to "make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. § 1630.9, at 414 (Appendix: Interpretative Guidance).[3] Hill argues that at no time prior to his res-

---

2. Reasonable accommodation may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [and] acquisition or modification of equipment or devices ...." 42 U.S.C. § 12111(9)(B); *see also* 29 C.F.R. 1603.2(*o*)(2)(ii).

3. When the proper accommodation is not so obvious, the following four-step "flexible, inter-

active process that involves both the employer and the qualified individual with a disability" is advocated by the EEOC:

(1) Analyze the particular job involved and determine its purpose and essential functions; (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and

ignation did Sheriff Harper or any of his agents attempt to either assess the nature of his disability or determine which positions or accommodations might be appropriate to allow him to continue working at the jail. *See* Pl.'s Proposed Findings of Fact ¶ 65. The Court agrees. A review of the record reveals that at no time during Hill's employment did Sheriff Harper attempt to undertake any sort of assessment of Hill's situation, either by reviewing medical documentation or by contacting Hill's treating physician. As discussed previously, however, Hill must carry the initial burden of demonstrating a *prima facie* case of employment discrimination claim under the ADA, including "reasonable accommodation". *See Bryant v. Better Business Bureau of Greater Maryland,* 923 F.Supp. 720, 737 (D.Md.1996). Hill has failed to meet this burden and thus, the burden does not shift to Sheriff Harper to demonstrate that he undertook any inquiry or to explain his failure to do so. *See id.* at 738 (citing 29 C.F.R. §§ 1630.2(*o*)(3), 1630.9 (Appendix: Interpretative Guidance)). Although the Court is troubled by Sheriff Harper's apparently flagrant disregard of the ADA regulations, the Court cannot find Sheriff Harper liable under these circumstances. The Court does, however, strongly encourage Sheriff Harper to review his obligations as an employer under the ADA and other employment rights legislation, and to take seriously the purpose of the ADA.

### III. CONCLUSION

For the reasons stated above, the Court concludes that Hill is not an "otherwise qualified" individual with a disability entitled to protection under the ADA. Accordingly, the Court will enter judgment for the Defendant.

An appropriate Order shall issue.

how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

29 C.F.R. § 1630.9, at 414 (Appendix: Interpretative Guidance).