THOMAS, Judge.
The Alabama State Personnel Board (“the Board”) appeals from a judgment of the Montgomery Circuit Court (“the trial court”) reversing an order of the Board that upheld the dismissal of Larry J. Clements from the Department of Youth Services (“the DYS”). We reverse and remand.

*224
Facts and Procedural History

Clements was dismissed from his position as a Youth Services Security Officer with the DYS effective February 8, 2012. Clements timely appealed his dismissal to the Board. The Board then assigned this matter to an administrative law judge (“ALJ”); a hearing was held before the ALJ on May 2, 2012. The ALJ submitted a report to the Board recommending that Clements’s dismissal be upheld. After hearing oral argument on August 14, 2012, the Board entered an order upholding Clements’s dismissal. Clements filed a timely notice of appeal of the Board’s order with the trial court on September 10, 2012.
The record indicates that the trial court received briefs from the parties and held a hearing on April 19, 2013, at the conclusion of which it rendered an oral judgment.[1] The Board filed an appeal with this court on May 24, 2013. This court entered an order on September 26, 2013, reinvesting the trial court with jurisdiction to enter a written order in compliance with Rule 58(a) and (b), Ala. R. Civ. P.; the trial court entered a final judgment on October 16, 2013, and this court entered an order on October 31, 2013, reinstating the appeal.
Clements is a former merit-system employee of the DYS. He was hired in 1994 as a security officer at the DYS’s Vacca campus in Jefferson County; he remained in that job classification until he was dismissed effective February 3, 2012. Clements’s performance appraisal states that the responsibilities for his position included: guards/patrols the entrance of the DYS institution; investigates law and departmental rules violations; attends/participates/leads meetings, workshops, training schools, and classes; and controls all access to and from the campus. The parties agree that Clements injured his wrist in 2006 as a result of an on-the-job injury; information contained in the record indicates that Clements did not report back to work for six to eight weeks after he sustained the injury. The record also indicates that Clements returned to work on “light duty” and was assigned by his supervisor to work exclusively at the front gate of the campus;[2] Clements continued to work exclusively at the front gate until his dismissal. Clements’s annual performance appraisals for the last several years stated that he was “on job restrictions due to on the job injury.”
In 2010, the DYS conducted a campus-wide assessment in response to numerous requests for accommodations due to disabilities. During that assessment, the DYS discovered that Clements’s personnel file did not include medical documentation regarding his injury. On November 18, 2010, Clements attended a meeting with DYS officials. Clements was instructed to complete an Essential Functions Checklist, a Uniform Medical Authorization, and an Employee Questionnaire and to have his physician complete a Physician-Medical Questionnaire. The meeting was documented in a memorandum from James Thomas, the Vacca Campus Administrator, to Clements that stated that Clements was currently under a medical restriction that interfered with his ability to perform all of his employment duties. The memorandum further stated that the DYS sought to evaluate whether Clements’s medical restrictions qualified as a disability pursuant to Americans with Disabilities Act (“the *225 ADA”) and whether Clements could perform the essential functions of his position with or without reasonable accommodations. The Essential Functions Checklist listed 11 essential functions of the security-officer job; Clements indicated that he could not perform 7 of the essential functions, including transporting students, reinforcing staff in maintaining discipline and control, and participating in departmental training programs. On the Employee Questionnaire, Clements indicated that he had a disability, that the disability was permanent, and that the DYS could not provide an accommodation that would enable him to perform all of his job functions.
Clements received a second memorandum from Thomas on January 11, 2011, that stated that Clements had not returned the completed Physician-Medical Questionnaire and instructed him to do so. The memorandum also stated that failure to provide the requested documentation could result in disciplinary action, including potential termination of employment. On February 29, 2011, Clements received a written warning from James Kent, the DYS Assistant Administrator of Institutional Services, reiterating that the DYS had not received the completed Physician-Medical Questionnaire and that failure to return the completed questionnaire could result in disciplinary action. Dr. Victoria Masear, Clements’s physician, completed the Physician-Medical Questionnaire on August 1, 2011; Dr. Masear indicated that Clements suffered from radial sensory neuroma and that he could not perform repetitive wrist motions or grip and that he was unable to restrain another person. Dr. Masear further indicated that it was unknown whether the injury was temporary or permanent at that time.
According to information in the record, Clements next received a letter from J. Walter Wood, Jr., the DYS Executive Director, dated December 2, 2011. That letter stated:
“Pursuant to your receipt and/or completion of the Mandatory Employment Functions and Performance Assessment and/or the completion [of the other documents,] I have received a recommendation that employment action, including possible demotion and/or suspension and/or dismissal, be taken regarding your employment as a Youth Services Security Officer. The recommendation reveals your failure to perform the essential functions for your position. Thus a hearing should be conducted regarding your ability to perform the essential functions, duties, responsibilities and results of your position with or without reasonable accommodations.
“A fact finding hearing will be conducted on Tuesday, December 20, 2011, at 10:30 a.m. in the Conference Room at the DYS Central Office, Mt. Meigs, Alabama. The hearing will be conducted by either me or my designee. I will review information presented and notify you of my decision regarding any possible necessary employment action. At the hearing, you may present verbal and written information[;] for example[,] you may request a reasonable accommodation, produce witnesses and be represented by counsel if you choose. I consider your attendance to be mandatory, but if you do not attend, I will be forced to make my decision based on the information available to me.”
The hearing took place as scheduled on December 20, 2011, at DYS headquarters. The hearing was conducted by Tim Davis, the DYS Deputy Director for Programs and Client Services; Michael Meyers, DYS legal counsel, attended on behalf of the DYS. Clements was also present with his legal representatives, Theron Stokes and *226 Charles Norton.[3] At the beginning of the hearing, Davis informed Clements that the purpose of the hearing was to ascertain whether he could “fully perform the essential job duties and responsibilities of [his] job classification.” Davis also stated that the hearing constituted the agency-employee interactive process, as required under the ADA. At the hearing, Clements confirmed his responses to the Essential Functions Checklist. Clements admitted at the hearing that he could not physically restrain a student and that he would have to call another security officer for assistance if it became necessary for him to do so.
Thereafter, Clements received a letter from Wood dated February 2, 2012, which stated that, “[b]ased on the testimony and/or documents presented during the [December 20, 2011,] hearing, there was evidence to support your inability to perform the essential functions, duties, responsibilities and/or results of your position with or without reasonable accommodations” and which ordered Clements’s dismissal from the security-officer position at the close of business on February 3, 2012. Clements filed a timely appeal of his dismissal to the Board; a hearing was thereafter held before the ALJ. Kent testified at the hearing before the ALJ that the DYS could not create a permanent job modification because it was already understaffed and because placing a security officer on light duty would stretch its already thin resources. Clements testified that he would be unable to respond to an “all call”[4] but that, in the event of an “all call,” he would stay at the front gate of the campus and ensure that other security officers responded. After the hearing, the ALJ recommended to the Board that it uphold Clements’s dismissal. The Board, after hearing oral argument from Clements and the DYS, adopted the recommendation of the ALJ.
Upon filing a timely appeal to the trial court, Clements argued that he had been denied due process, that the evidence did not support his dismissal, and that his dismissal was barred by the “statute of limitations” set out in § 36-26-29, Ala. Code 1975. In its judgment, the trial court found that Clements’s
“due process rights, as well as those rights to which he is entitled under law, including but not limited to [his rights under the ADA] and the Vocational Rehabilitation Act of 1973 were violated as a result of the conduct of [the Board]. In addition, contrary to the position of [the Board], the employment action was barred under the applicable statute of limitation, § 36-26-29, Code of Ala. (197[5]), and the court finds that the disciplinary record of the employee was not taken into consideration in making the employment decision, in violation of State Personnel Board Regulation 670-x-18-.02(5), § 36-36-27[,] Code of Ala. (1975)[,] and § 36-26-29, Code of Ala. (1975).”
The trial court reversed the decision of the Board and reinstated Clements to his security-officer position with backpay and benefits.
The Board timely appealed to this court and argues the following in its brief on appeal: (1) that substantial evidence sup *227 ported Clements’s dismissal, (2) that Clements’s due-process rights were not violated, (3) that § 36-26-29 is inapplicable to the present case, and (4) that the trial court exceeded its authority by awarding Clements backpay.

Standard of Review

“The standard of appellate review to be applied by the circuit courts and by this court in reviewing the decisions of administrative agencies is the same. See Alabama Dep’t of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 384 (Ala.Civ.App.2008). That prevailing standard is deferential toward the decision of the agency:
“ ‘Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers.... Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.’
“Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989). Also, the Alabama Administrative Procedure Act provides that,
“ ‘[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.’
“Ala.Code 1975, § 41-22-20(k). ‘Neither this court nor the trial court may substitute its judgment for that of the administrative agency.’ Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App.1989).
“Further, this court does not apply a presumption of correctness to a circuit court’s judgment entered on review of an administrative agency’s decision ‘because the circuit court is in no better position to review an agency’s decision than this court.’ Alabama Bd. of Nursing v. Peterson, 976 So.2d 1028, 1033 (Ala.Civ.App.2007). Finally, in order for the Board’s decision to uphold the termination of' an employee to warrant affir-mance, that decision would have to be supported by ‘substantial evidence,’ which in an administrative context is ‘relevant evidence that a reasonable mind would view as sufficient to support the determination.’ Ex parte Personnel Bd. of Jefferson County, 648 So.2d 593, 594 (Ala.Civ.App.1994).”
Alabama State Pers. Bd. v. Dueitt, 50 So.3d 480, 482 (Ala.Civ.App.2010).

Analysis

I.
The trial court, in its judgment, found that “[Clements’s] employment record was good and that there was no discipline, progressive or otherwise, that would warrant termination.” We express no opinion regarding the accuracy of that statement. Clements was clearly not dismissed due to disciplinary issues; rather, it is clear that Clements, who admitted as much, could not perform all the essential functions of his job. Clements’s employment with the DYS as a security officer is governed by the State Merit System Act, *228 § 36-26-1 et seq., Ala.Code 1975.[5] Section 36-26-27(a), Ala.Code 1975, provides that an employee can be dismissed whenever the appointing authority considers that the “good of the service” will be served thereby.
“Removal for the good of the service means that the employee must be discharged for a cause. The cause for which the employee is discharged must ‘interfere with the effective discharge of the employee’s duties and/or the effective discharge of the duties of the department for which he works, so as to make his continued employment harmful to the public interest.’ Maddox v. Clark, 422 So.2d 791 (Ala.Civ.App.1982).”
Fulton v. Department of Pub. Health, 494 So.2d 73, 75 (Ala.Civ.App.1986).
To reiterate the standards stated above, in order for this court to affirm the decision of the Board to uphold the dismissal of Clements, that decision would have to be supported by “substantial evidence” that Clements’s dismissal was for the good of the service. See Dueitt, supra, and Fulton, supra. Substantial evidence is “ ‘relevant evidence that a reasonable mind would view as sufficient to support the determination.’ ” Dueitt, 50 So.3d at 482 (quoting Ex parte Personnel Bd. of Jefferson Cnty., 648 So.2d 593, 594 (Ala.Civ.App.1994)). Clements argues that his assignment to the front gate was an accommodation that enabled him to successfully perform the job duties that were assigned to him. . However, by his own admission, Clements was unable to perform several of the essential functions of his job. In addition, there was testimony from DYS officials that Clements’s inability to perform certain essential functions of his job, such as restraining students, could negatively impact DYS operations.
In Fulton, supra, Fulton was dismissed from his employment with the Department of Public Health (“the DPH”) because of a felony conviction for manufacturing marijuana. 494 So.2d at 74. In affirming the dismissal, this court stated that the DPH has a statutory responsibility to enforce the laws relating to drugs and that Fulton’s “[mjanufacturing drugs certainly interfered with [the DPH’s] effective discharge of its duties and therefore made Fulton’s continued employment harmful to the public interest.” Id. at 75. Likewise, in the case before us, the mission of the DYS is to enhance public safety by securing those youth who are adjudicated juvenile offenders. The Vacca campus is a secure juvenile-correctional facility that houses juvenile males aged 12 to 15 years old. Clements’s inability to perform arguably the most essential functions of the security-officer job — physically restraining students and participating in training— cannot be considered to be in the public’s best interest.
Clements appears to argue that, because he successfully performed the duties assigned to him, he was successfully performing all the essential functions of the security-officer job as it pertained to him.
“It is by now clear that essential functions ‘are the fundamental job.duties of a position that an individual with a disability is actually required to perform.’ Earl [v. Mervyns, Inc.], 207 F.3d [1361,] 1365 [ (11th Cir.2000) ]; see also 29 C.F.R. § 1630.2(n)(2)(i). Moreover, ‘consideration shall be given to the employer’s judgment as to what functions of a job are essential, and if an employer *229 has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.’ 42 U.S.C. § 12111(8); see also D’Angelo [v. ConAgra Foods, Inc.], 422 F.3d [1220,] 1230 [ (11th Cir.2005) ].”
Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1257 (11th Cir.2007). It is well documented throughout the record and in Clements’s personnel file that the essential functions of the security-officer job included physically restraining individuals and responding to disturbances.
By his own admission, Clements cannot perform all the essential functions of his job; he further admitted that there is no accommodation that the DYS could provide that would enable him to perform all the essential functions of his job. Therefore, he is not a “qualified individual”— “someone with a disability who, ‘with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.’ 42 U.S.C. § 12111(8); see also Earl [v. Mervyns, Inc.], 207 F.3d [1361,] 1365 [(11th Cir.2000) ].” Holly, 492 F.3d at 1256.
Based on the foregoing, we conclude that the trial court erred insofar as it found that there was not sufficient evidence to support Clements’s dismissal.
II.
The Board next argues that the trial court erred by finding that Clements was denied due process.
“In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court stated that the procedural due process guaranteed under the United States Constitution requires that a public employee who may be dismissed only for cause must be afforded a limited pretermination hearing.2 An employee ... may be dismissed only ‘for a cause’ under §, 36-26-27(a), Ala.Code 1975. Fulton v. Department of Public Health, 494 So.2d 73, 75 (Ala.Civ.App.1986); see also Kucera v. Ballard, 485 So.2d 345, 346 (Ala.Civ.App.1986). In Loudermill, the Supreme Court stated:
“ ‘The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story. To require more than this pri- or to termination would intrude to an unwarranted extent on the government’s interest in quickly removing an unsatisfactory employee.’
“470 U.S. at 546, 105 S.Ct. 1487 (citations omitted). The Supreme Court concluded that ‘all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [applicable state statute.]’ Id. at 547-48, 105 S.Ct. 1487.
“ 2 Our supreme court ‘has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution.’ Vista Land & Equip., L.L.C. v. Computer [Programs ] & Sys., Inc., 953 So.2d 1170, 1174 (Ala.2006).”
Alabama State Pers. Bd. v. Garner, 4 So.3d 545, 550 (Ala.Civ.App.2008).
In the December 2, 2011, letter from Wood, Clements was informed that a hearing was scheduled to ascertain whether he could perform the essential functions of his job, that dismissal was a potential result of the hearing, and that Clements was allowed to have an attorney present and to present witnesses and other evidence at the hearing. The hearing proceeded as *230 scheduled; Clements was present at the hearing and was represented by his legal counsel. Wood informed Clements in the February 2, 2012, letter that Clements’s dismissal was based on the evidence presented at the hearing indicating that he could not perform the essential functions of his job. Wood also informed Clements of his right to appeal to the Board and outlined the procedures for doing so. Clements had a second hearing before the ALJ where he was again represented by legal counsel. Lastly, Clements was allowed to present oral argument to the Board before it rendered its decision.
Clements appears to argue that he was not aware that the initial assessment of his ability to perform the essential functions of his job could ultimately lead to his dismissal. Clements also appears to attack the sufficiency of the statement of facts submitted by the DYS pursuant to § 41-22-12(b)(3) and (4), Ala.Code 1975,[6] as part of the appeal to the Board. We find Clements’s argument that he was denied due process unpersuasive. Therefore, we conclude that the trial court erred insofar as it found that Clements’s due-process rights were violated.
III.
The Board next argues that the trial court erred by finding § 36-26-29 applicable to the present case. Section 36-26-29 provides:
“No charges for dismissal or disciplinary action shall be preferred against any employee in the classified service of the state after the expiration of three years from the date such cause became known to the authority having the power to dismiss or discipline such employee.”
In its brief, the Board argues that that statute relates to disciplinary actions resulting from insubordinate behavior. The Board further asserts that § 36-26-29 “has no application to an on-going job performance issue in which the agency attempts to work with the employee,” as was the case with Clements. Clements argues on appeal that the statute serves as an absolute bar to his dismissal. This argument appears to be based upon the premise that the statute of limitations promulgated by § 36-26-29 began to run when Clements was injured in 2006. As we have noted, Clements was dismissed from his position because he was physically unable to perform the essential functions of his job. Moreover, we see no evidence in the record indicating that the DYS was notified in 2006 as to whether Clements’s injury was temporary or permanent. The Board argues that, because Clements was dismissed due to his inability to perform the essential functions of his employment and not due to disciplinary issues, the ADA, not § 36-26-29, is the relevant authority in the present case. We agree. Our research has not revealed Alabama caselaw directly on point for either argument. The Board, however, has cited in its brief on appeal federal caselaw that we find instructive in the present case.
Champ v. Baltimore County, 884 F.Supp. 991 (D.Md.1995), aff'd, 91 F.3d 129 (4th Cir.1996), is analogous to the case at bar. In Champ, a police officer suffered an off-duty injury in which he lost all use *231 of his left upper arm. Id. at 994. After rehabilitation, he returned to the police department where he worked in light-duty assignments for the next 16 years, in contravention of the police department’s policy limiting light-duty assignments to 251 days. Id. Budgetary constraints prompted the police department to mandate that all officers who could not fully perform the duties of a police officer retire, transfer, or resign. Id. The Champ court acknowledged that the ADA requires an employer to make a reasonable accommodation to an otherwise qualified individual with a disability unless such an accommodation would impose an undue hardship. Id. at 994-95. However, in upholding the dismissal of the police officer, the Champ court also recognized that “an employer need only reassign a ‘qualified individual with a disability.’ Since [the police officer] could not perform the ‘essential functions’ of the position, with or without reasonable accommodation, he is not a qualified employee eligible for such reassignment.” Id. at 1000.
Likewise in McDonald v. State of Kansas, Department of Corrections, 880 F.Supp. 1416, 1419 (D.Kan.1995), a correctional officer had received accommodations for three years for his obesity in the form of specially ordered uniforms, a specially reinforced chair, temporary light duty, and the use of a modified shake-down procedure. In his third year of employment, the correctional officer was diagnosed with congestive heart failure and initially assigned to temporary light duty. Id. However, once it became apparent that his condition would not improve, he was dismissed from his employment. Id. at 1421. The correctional officer asserted to the trial court that he had been denied reasonable accommodations. Id. at 1423. The Kansas Department of Corrections responded that its policy allowed for temporary and long-term light-duty assignments to allow employees to recover from temporary illnesses or injuries but that there were no permanent light-duty positions. Id. at 1423 n. 2.
In upholding the dismissal, the McDonald court stated:
“[The correctional officer] admits that he cannot do what the Court has found are the essential functions of a correctional officer. As to possible accommodations, [the correctional officer’s] idea is that he rotate among the gun tower, clothing issue and tool and key sergeant positions, where he hopefully will have little contact with inmates, no occasion to respond in situations of physical emergency, and no need to stand, walk, lift, bend, squat or climb stairs. The Court notes that this is not an existing rotation and, so far as the record reflects, none of these positions, taken individually, are currently vacant. [The correctional officer] asks the Court to hold [the Department of Corrections] liable for failing to create a new correctional officer rotation that does not require physical restraint of inmates or ability to respond in a physical way to inmate riots, unrest or fires. The ADA does not, however, require the employer to create a new position to accommodate the disabled worker. Southeastern Community College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); White [v. York Int’l Corp., 45 F.3d 357,] 361 [(10th Cir.1995)]; Chiari [v. City of League City, 920 F.2d 311,] 318 [ (5th Cir.1991) ]; 29 C.F.R. pt. 1630, App. § 1630.2(o).”
McDonald, 880 F.Supp. at 1423.
A last example is Hill v. Harper, 6 F.Supp.2d 540 (E.D.Va.1998). Hill was employed by the City of Petersburg Sheriffs Department in 1977 as a deputy sheriff. Id. at 541. His duties included work *232 ing five different areas of the jail. Id. In 1990, Hill developed circulatory problems that impaired his ability to stand for long periods; the problems progressed to impair his ability to climb stairs and to run. Id. at 542. The jail administrator allowed Hill to work exclusively in the control room of the jail. Id. In 1993, the sheriff informed all the jail deputies that light-duty-status requests would no longer be honored and that they would be expected to perform all the jail-deputy duties in all areas of the jail. Id. Because he could not perform all the duties required of a jail deputy, Hill tendered his resignation in lieu of termination. Id.
Hill argued to the trial court that the sheriff could have reasonably accommodated him by allowing him to continue to work exclusively in the control room. Id. at 544. Hill further pointed out that the sheriff, through his agent the jail administrator, had already accommodated him in this fashion for the past three years. Id. In finding for the sheriff, the Hill court found that
“because this accommodation effectively eliminated the ‘essential function’ of being able to rotate through the various duty posts, the Court finds that it does not constitute a ‘reasonable accommodation’. Thus, irrespective of the length of time Hill previously worked in the control room, [the sheriff] was not required to continue this accommodation. See, e.g., Champ v. Baltimore County, 884 F.Supp. 991 (D.Md.1995), aff'd, 91 F.3d 129 (4th Cir.1996). Having failed to identify any other possible ‘reasonable accommodations’, the Court finds that Hill has not successfully stated a prima facie case of employment discrimination under the ADA.”

Id.

We agree with the decisions of the federal courts that an employer should not be punished for its efforts to afford an employee an opportunity to recuperate from an injury by temporarily assigning the employee to a light-duty position. It has not escaped our attention that the DYS might have been remiss in monitoring Clements’s injury and his progress recovering from the injury. However, it is undisputed that the DYS was not aware that Clements’s injury might be permanent until November 2010. Even assuming that § 36-26-29 is applicable to this set of circumstances, the DYS clearly took action within the three-year period prescribed by that statute.
IV.
The Board lastly argues that the trial court erred by awarding Clements “back pay and other benefits to which [Clements] would be entitled had he not been unlawfully terminated.” However, because we have concluded that the trial court erred by reinstating Clements, this issue is moot, and we pretermit further consideration of it.

Conclusion

Based on the foregoing, the judgment of the trial court in favor of Clements is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Both parties state in their briefs on appeal that a hearing was also held on December 17, 2012.

. Clements’s official personnel file, which is included in the record, does not contain documentation of the 2006 injury.

. Stokes and Norton are employed by, and were provided to Clements through, the Alabama Education Association.

. According to testimony in the record, a DYS staff member issues an "all call” when an incident occurs on campus that requires all male staff members to assist with the effort to quell a disturbance, and, according to the testimony, physical force is frequently required to establish control of the situation when an "all call” is issued.

. Clements inexplicably refers to his "contract of employment” throughout the record , and in his brief on appeal. Clearly, as a State Merit System employee, Clements had no contract of employment with the DYS.

. Section 41 — 22—12(b)(3) and (4) provides:
"(b) The notice [of hearing] shall include:
[[Image here]]
"(3) A reference to the particular sections of the statutes and rules involved; and
"(4) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.”