73 F.3d 361
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 James D. CLARK, Plaintiff-Appellant,
v.
CENTRAL CARTAGE COMPANY, Defendant-Appellee.
 No. 94-4266.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1995.
 
 Before: BROWN, SILER, and MOORE, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 In this diversity action, James D. Clark appeals from the district court's order granting Central Cartage Company ("the company") summary judgment on Clark's employment discrimination claim. Clark, who became handicapped after an on-the-job injury, claims that the company terminated his employment because of his handicap in violation of Ohio's Fair Employment Practices Act ("the Act"). Ohio Rev.Code Ann. Sec. 4112.02(A) (Anderson 1991). For the following reasons, we AFFIRM the judgment of the district court.
 
 
 2
 The company, a common carrier operating in the Midwest, employed Clark as a "City Driver" in Canton, Ohio. Late in August of 1991, Clark suffered an on-the-job back injury. Because of resulting chronic back pain, Clark was unable to work for eleven months. The terms and conditions of Clark's employment were set forth in a collective bargaining agreement called the National Master Freight Agreement ("NMFA"). As the NMFA states, the company had established a "modified work program designed to provide temporary opportunity to those employees who are unable to perform their normal work assignments due to a disabling on-the-job injury." The NMFA explicitly states that employees who are permanently disabled and who are thereby unable to resume their regular job are not eligible to participate in the program.
 
 
 3
 On July 28, 1992, Clark received a telegram from Christine Speer, the company's "Modified Work Manager," which offered him a "General Assistant" position within the modified work program. Clark's duties as a general assistant consisted of helping the two permanent office employees at the Canton terminal with their tasks, including dispatching and doing paperwork. Clark worked as a general assistant until January 5, 1993. Clark concedes that he did not replace anyone in that position, and that the company did not hire a replacement when it terminated him.
 
 
 4
 On January 5, 1993, Clark's physician informed both Clark and the company that Clark was permanently disabled and could not return to his truck driving job. Within a few days, Clark received a letter from Speer stating that, because of his permanent disability that prevented him from returning to his truck driving duties, he was no longer eligible to participate in the modified work program as provided by the NMFA. The company terminated Clark at that time.
 
 
 5
 In this action, Clark concedes that he is unable to perform the job of city driver. Clark maintains, however, that he is able to perform the job of general assistant. Clark asserts that when the company terminated him from his job as a general assistant, it did so because of his handicap, and in violation of Ohio antidiscrimination laws.[1] The company contends that Clark was employed as a city driver, not a general assistant, and that it was not illegal to terminate him from that position when it was determined that he would never be able to perform the job of city driver. The district court agreed with the company and granted summary judgment. Clark appeals. The company asserts that Clark's appeal is frivolous and asks for costs and sanctions.
 
 
 6
 We review a district court's grant of summary judgment de novo and apply the same test as the district court. E.g., Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir.1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party satisfies its summary judgment burden by showing that the evidence produced by the nonmoving party is insufficient to support the nonmoving party's case. Pierce, 40 F.3d at 800. The nonmoving party then bears the burden of producing specific facts which demonstrate a genuine issue of material fact necessitating a trial. Id. It is then the court's duty to determine if the nonmoving party has presented evidence sufficient to persuade a reasonable jury or fact finder to find in its favor on each element necessary to its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must consider all facts, and all inferences drawn from them, in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 7
 Ohio's Fair Employment Practices Act ("the Act") makes it unlawful "[f]or any employer, because of the ... handicap ... of any person, to discharge without just cause, ... or otherwise to discriminate against that person with respect to ... any matter directly or indirectly related to employment." Ohio Rev.Code Ann. Sec. 4112.02(A). The Act also states, however, that "[n]othing in ... this section shall be construed to require a handicapped person to be employed ... in a job that requires him routinely to undertake any task, the performance of which is substantially and inherently impaired by his handicap." Id. at Sec. 4112.02(L). Thus, to present a prima facie case that the company discharged him in violation of section 4112.02(A), Clark must show that he could "safely and substantially perform the essential functions of the job in question." Hazlett v. Martin Chevrolet Inc., 496 N.E.2d 478, 480 (Ohio 1993).
 
 
 8
 The company asserts that the district court correctly granted summary judgment because it is undisputed that Clark cannot perform the essential functions of a city driver. While Clark concedes that he is incapable of being a city driver, he maintains that there is a genuine issue of material fact regarding whether the "job in question" is that of city driver, or that of general assistant. Clark, however, has not offered evidence sufficient to support a finding that, at the time of his termination, his "job in question" was that of general assistant.
 
 
 9
 The company concedes that Clark was working as a general assistant when it terminated him. It contends, however, that the position of general assistant is not the "job in question" because it was only a temporary position assigned under the company's modified work program created pursuant to the NMFA. As the company points out, the NMFA states that the modified work program is intended only as a "transitional return-to-work program offering both physical and mental therapeutic benefits" which may help "accelerate the rehabilitative process of an injured employee." Moreover, the NMFA also provides that an employee "who may never be expected to receive an unrestricted medical release" is ineligible for participation in the program.
 
 
 10
 Clark does not dispute the purpose of the modified work program. Rather, he alleges that the company is using that program in an attempt to take from him a permanent job which it had created for him. Clark contends that he was never a participant in the modified work program, but that the company offered him the job of general assistant as a permanent position which it created to accommodate his handicap.[2] Clark maintains that the company's own evidence supports this contention. It does not.
 
 
 11
 The evidence indicates that the company treated Clark after his injury, not as an employee in a permanent position, but as an employee on temporary assignment. Clark's position as a general assistant was offered by Christine Speer, the manager of the modified work program. The telegram offering him the position noted that the company offered the position pursuant to the section of the NMFA describing the modified work program. Moreover, the company terminated Clark from his general assistant position immediately upon notification that he was no longer eligible to participate in the program. In short, we hold, as the district court did, that there can be no genuine dispute that the "job in question" was that of city driver, not general assistant.[3]
 
 
 12
 The company asserts that Clark's appeal is frivolous, and has asked us to award sanctions against him. Effective December 1, 1994, Federal Rule of Appellate Procedure 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Prior to the amendment, Rule 38 allowed appellees to include requests for sanctions in their briefs. Were we otherwise inclined to grant the company's request, which we are not, we could not do so because the company has failed to comply with the procedure set out in the rule, as amended.
 
 
 13
 The company did not present a separately filed motion for sanctions; rather, it added the request to its brief. In response to counsel's assertion at oral argument that this procedure provided Clark with notice and an opportunity to respond, we cite the following statement of the Advisory Committee on Appellate Rules: "A statement inserted in a party's brief that the party moves for sanctions, in not sufficient notice.... Only a motion, the purpose of which is to request sanctions, is sufficient." Fed.R.App.P. 38 advisory committee's notes. We should note, however, that in Simmons v. Allstate Life Ins. Co., 65 F.3d 526, 531 (6th Cir.1995), this court held that, where the appellee filed a brief in which it sought sanctions prior to the effective date of the amended rule, to entertain the appellee's request would not "denigrate the value of the recent amendment" since the appellant devoted most of her reply brief to the sanctions issue. Simmons is distinguishable from the case at bar, because, in this case, the company filed its brief after amended Rule 38 became effective.
 
 
 14
 Because there is no genuine issue of material fact, and the company was entitled to judgment as a matter of law, we AFFIRM the judgment of the district court. We DISMISS the appellee's motion for sanctions because it is not properly presented.
 
 
 
 [1]
 Clark does not assert a federal claim
 
 
 [2]
 Clark principally relies on a district court case styled Taylor v. Garrett, 820 F.Supp. 933 (E.D.Pa.1993). In Taylor, the Navy employed the plaintiff as a "rigger." Id. at 934. The plaintiff became handicapped, and as a result, the Navy transferred him to a different position. Some time later, the Navy fired the plaintiff because he was unqualified to do the job for which it had hired him, i.e., rigger. The Pennsylvania district court refused to grant the Navy summary judgment because it could not determine from the record whether the Navy had a policy providing for the assignment of handicapped workers to permanent light-duty positions. Id. at 938. This case is unpersuasive, however, because it is distinguishable. In the case at bar, the evidence clearly shows that the modified work program was temporary only. Moreover, there is no evidence of any permanent reassignment policy in this case
 We realize that employers must make reasonable accommodations for handicapped employees, and that they cannot deny employees alternative employment "reasonably available under the employer's existing policies." School Bd. of Arline, 480 U.S. 273, 289 n. 19 (1987). In this case, though, there is no evidence that any permanent alternative employment was available to Clark under the company's employment policies.
 
 
 [3]
 We do not wish to imply that an employer is shielded from liability for employment discrimination any time it terminates a handicapped employee pursuant to a collective bargaining agreement. Our holding is limited to the facts of this case