**Lynnette M. NIGHSWANDER, Plaintiff(s),**

v.

**William J. HENDERSON, Postmaster General, and National Association of Letter Carriers, Defendant(s).**

No. 3:00CV7571.

United States District Court, N.D. Ohio, Western Division.

Oct. 5, 2001.

Sharon K. Cason–Adams, Sanborn, Brandon, Duvall & Bobbitt, Columbus, OH, Stephen P. Postalakis, Blaugrund, Herbert & Martin, Dublin, OH, for Lynnette M. Nighswander.

Holly T. Sydlow, Office of the United States Attorney, Northern District of Ohio, Toledo, OH, for William J. Henderson.

David M. Fusco, Schwarzwald, Rock & McNair, Cleveland, OH, Peter Herman, Cohen, Weiss & Simon, New York, NY, for National Ass'n of Letter Carriers.

## ORDER

CARR, District Judge.

Plaintiff Lynnette M. Nighswander brings this action against Defendants Wil-

liam J. Henderson, Postmaster General, and the National Association of Letter Carriers, claiming she was discriminated against on the basis of disability. This court has jurisdiction pursuant to 29 U.S.C. § 185 and 28 U.S.C. §§ 1331. Pending is defendant United States Postal Service's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendant's motions shall be denied in part and granted in part.

## BACKGROUND

Nighswander began working for the United States Postal Service ("USPS") in 1986 as a part-time flexible city letter carrier. She was promoted to full-time regular letter carrier in 1990. On November 9, 1993, Nighswander was involved in a motor vehicle accident while working. Nighswander suffered back and neck injuries and was diagnosed with lumbosacral strain/sprain, cervical strain, nerve impingement, and fibromyalgia. Nighswander's physician restricted her work duties, preventing Nighswander from performing her full-time regular carrier job. USPS assigned Nighswander to a limited duty, modified letter carrier position in its Tiffin Branch Post Office.

On March 7, 1995, Nighswander's orthopedic specialist placed Nighswander on permanent work restrictions, including restrictions on lifting.

On April 30, 1997, Jill Groves, Postmaster of the Tiffin office, gave Nighswander a rehabilitation job offer for the position of modified part-time flexible clerk. Nighswander was given three days to consider the offer, but later received an extension. Nighswander filed a grievance and a hearing was held with Supervisor Penny Spears on May 8, 1997. Spears denied the grievance and told Nighswander that Nighswander had no choice but to accept the job offer.

Groves heard Step Two of the grievance process, in which Nighswander was requesting that she be allowed to remain in her then current, modified, full-time regular carrier position. Groves denied this request and Nighswander's grievance. On May 16, 1997, Nighswander signed the job offer under protest. Nighswander subsequently initiated a discrimination charge with the EEOC.

On November 19, 1999, Administrative Law Judge Porter heard Nighswander's EEOC charge. Nighswander presented evidence of the USPS's practice of accommodating several disabled carriers in Akron, Ohio, by allowing them to remain in modified full-time carrier positions. USPS stipulated that, as to sixteen carriers in the Akron district post offices: 1) each carrier was a full-time, regular carrier at one time; 2) each carrier suffered an injury that resulted in permanent work restrictions preventing them from performing the essential functions of a full-time, regular mail carrier; 3) each carrier was offered and accepted a full-time modified carrier position as a disability accommodation; 4) none of the carriers was required to transfer to a part-time, flexible clerk position because of inability to perform the essential functions of a full-time regular carrier; and 5) some of the carriers became permanently, partially disabled before and after 1995. The Administrative Judge found that the USPS had not discriminated against plaintiff. (Doc. 20 Ex. 1 at 3).

## STANDARD OF REVIEW

### I. Motion to Dismiss Standard

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plain-

tiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### II. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED.R.CIV.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is in-

sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

### DISCUSSION

### I. Counts I and II: Disability Discrimination in Violation of the Rehabilitation Act

Plaintiff's complaint alleges that the USPS violated §§ 501 and 504 of the federal Rehabilitation Act. Defendant moves for dismissal or summary judgment with three arguments: 1) plaintiff is unqualified for the job she seeks; 2) plaintiff failed to establish that similarly situated employees were treated differently; and 3) defendant provided plaintiff with a reasonable accommodation. I disagree as to each of defendant's contentions.

This circuit allows a plaintiff to proceed under both § 501 and § 504 of the Reha-

bilitation Act for a claim of disability discrimination. *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1077–78 (6th Cir. 1988).[1]

Section 501 of the Rehabilitation Act requires federal employers to develop a plan "to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities." 29 U.S.C. § 791(b). Section 501 also requires federal employers to provide reasonable accommodation to employees with disabilities unless the accommodation would be an undue hardship. *Dean v. Veterans Admin., Reg'l Office*, No. 1:89CV2357, 1995 U.S. Dist. LEXIS 8782, at *44 (N.D.Ohio Jan. 6, 1995) (citing 29 C.F.R. § 1613.704).

Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to .discrimination under any program or activity receiving Federal financial assistance or under any program or activity

conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

In a Rehabilitation Act case, courts must apply the same standards as those used in interpreting cases under the Americans with Disabilities Act. *See* 29 U.S.C. § 794(d); *Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 842 (6th Cir.1996) ("By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination.") (citing 29 U.S.C. § 794(d)).

## A. Prima Facie Case of Disability Discrimination

■ To make a claim for disability discrimination under the Rehabilitation Act, a plaintiff must establish that he or she is: "1) an individual with a disability under the Act, 2) otherwise qualified for the job with or without a reasonable accommodation, and 3) being discriminated against solely because of his or her handicap." *Burns*, 91 F.3d at 841; *Doherty v. Southern Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir.1988).[2]

---

1. There is considerable dispute among the circuits as to whether a plaintiff can proceed under both § 501 and § 504. *See Rivera v. Heyman*, 157 F.3d 101, 104 (2d Cir.1998) ("The Fifth, Sixth, and Eighth Circuits have concluded that section 501 and section 504 of the Rehabilitation Act overlap, and that federal employees can sue under both provisions. The Seventh, Ninth, and Tenth Circuits ... held ... section 501 is the exclusive remedy for federal employees suing under the Rehabilitation Act.") (citations omitted).

2. There may be reason to distinguish between the prima facie case elements of a § 501 and § 504 claim. The Tenth Circuit has stated, "It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by federal grantees under section 504 or those owed by

employers under the ADA." *Woodman v. Runyon*, 132 F.3d 1330, 1343 (10th Cir. 1997). Thus, while the ADA and the Rehabilitation Act generally are to be interpreted and applied consistently with one another, ..., the standards used to determine whether a federal employer has violated section 501 of the Rehabilitation Act will not always be identical to those employed in suits brought under section 504 or under the ADA.... In particular, this court recently noted that "the meaning of reasonable accommodation ... may vary due to the heightened duties ascribed to federal employers under section 501." *Woodman*, 132 F.3d at 1338; *see also id.* at 1339 n. 8. *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1311 (10th Cir.1998) (citing 29 U.S.C. § § 791(g), 794(d); 42 U.S.C. § § 12117(b), 12201(a); *White v. York Int'l Corp.*, 45 F.3d 357, 360 n. 5 (10th Cir.1995); *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 410–11, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Wood-*

■ A plaintiff can demonstrate disability discrimination by offering direct or indirect evidence. In *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186–87 (6th Cir.1996), the court articulated different frameworks for proving a case with direct or indirect evidence. In a direct evidence case, where the employer either relied on the employee's disability when making an adverse employment decision or it admitted reliance on the disability:

1) The plaintiff bears the burden of establishing that he or she is "disabled."[3]

2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 1186.

■ If the plaintiff offers indirect evidence (such as apparent preferential treatment of persons without a disability) to support a claim of disability discrimination, the plaintiff may demonstrate a prima fa-

---

*man*, 132 F.3d at 1343) (footnote omitted); *see also Florence v. Runyon*, 990 F.Supp. 485, 490 (N.D.Tex.1997) ("In contrast [to § 504], under § 501, the elements of a prima facie case do not appear in the statute and are not settled under the case authority. And no court has squarely addressed the issue of the proper prima facie elements for a § 501 claim.") (citation omitted).

In *Cottrell v. Runyon*, No. 1:94CV1840, 1996 U.S. Dist. LEXIS 16594, at *14 (N.D. Ohio June 11, 1996), after stating that the Sixth Circuit allows plaintiffs to assert a disability discrimination claim under § 501 and § 504, the court stated, "These provisions differ in that while a cause of action under § 504 requires proof of discriminatory intent a cause of action under § 501 only requires proof of failure to make reasonable accommodation, with or without discriminatory intent." The court later stated that because the defendant's motion for summary judgment only addressed § 504, the court would treat the motion as a motion for partial summary judgment under § 504 alone. *Id.* at *14–15.

The Sixth Circuit has not specifically held that the same prima facie case elements apply to § 501 and § 504 claims. In *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1078–79 (6th Cir.1988), the court stated that a plaintiff could proceed under both § 501 and § 504 and then analyzed the plaintiff's § 501 and § 504 claims under the same standard. The court stated, "Because there is no dispute that Hall was handicapped within the meaning of the Act and was denied a position because of her handicap, the essential inquiry in this case, *under either section of the Act,* is whether Hall was otherwise qualified for the job of distribution clerk." *Id.* at 1078 (emphasis added). "The court did not face the decision of whether § 501 imposed a higher burden on the defendant U.S. Postal Service because it was clear that the plaintiff was denied a position because of her handicap." *Id.*

In *Burns,* while determining a case brought by the plaintiff under § 504, the court stated the elements necessary "[t]o make out a claim under the *Rehabilitation Act." Burns,* 91 F.3d at 841 (emphasis added).

The Sixth Circuit thus allows a plaintiff to proceed under both claims and appears to follow the same prima facie elements for both claims. While the Sixth Circuit never has clearly stated that the same prima facie case standards apply to § 501 and § 504 claims, it appears best to follow the general language set forth in *Burns* and apply the same standard to plaintiff's § 501 and § 504 claims. *See also McCottry v. Runyon,* 949 F.Supp. 527, 530 (N.D.Ohio 1996) (applying the same test for the plaintiff's § 501 and § 504 claims) (citing *Doherty v. Southern Coll. of Optometry,* 862 F.2d 570 (6th Cir.1988); *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1250 (6th Cir.1985)). The parties to this action, furthermore, have not based any arguments on a distinction between § 501 and § 504.

3. Because defendant has not disputed whether plaintiff is disabled, the plaintiff has met her prima facie case on this issue.

cie case by showing: 1) the plaintiff is disabled; 2) the plaintiff is otherwise qualified for the position, with or without reasonable accommodation; 3) the plaintiff suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability;[4] and 5) similarly situated persons not in the protected class were treated differently.[5] *Id.; Back v. United States Postal Serv.,* No. 99–5294, 2000 WL 353543, *3, 2000 U.S.App. LEXIS 6133, at *9 (6th Cir. March 29, 2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Mon-*

*ette,* 90 F.3d at 1184; *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994)). Following plaintiff's prima facie case, the defendant must offer a legitimate reason for the defendant's action. *Monette,* 90 F.3d at 1186. Plaintiff retains the burden of proving the defendant's explanation is false or pretextual. *Monette,* 90 F.3d at 1186.

■ Defendant disputes two issues within the direct and indirect evidence framework for proving discrimination. Defendant argues: 1) plaintiff is not otherwise qualified for the job she seeks; and 2) plaintiff failed to establish that similarly situated employees were treated differently.[6]

---

**4.** Because defendant does not dispute whether plaintiff is disabled, whether plaintiff suffered an adverse employment action, and whether defendant knew or had reason to know of plaintiff's disability, these issues need not be addressed, and plaintiff has met her prima facie case on these issues.

**5.** The fifth element of a plaintiff's prima facie case using indirect evidence originally was stated as a requirement that "the position remained open while the employer sought other applicants or the disabled individual was replaced." *Monette,* 90 F.3d at 1186. The Sixth Circuit, however, has stated, "The fifth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Hopkins v. Electronic Data Sys. Corp.,* 196 F.3d 655, 660 (6th Cir.1999) (citing *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995)).

**6.** In *Monette,* 90 F.3d at 1184, the Court stated, "[W]hen the plaintiff has direct evidence of discrimination based on his or her disability, there is no need for a *McDonnell Douglas* type burden shift and traditional burdens of proof will apply." Defendant does not dispute whether plaintiff's evidence constitutes direct evidence of discrimination. Defendant, thereby, leaves open the opportunity for plaintiff to proceed under a direct evidence framework. Defendant also, however, makes arguments discussed traditionally under the indirect evidence framework, thereby leaving open the opportunity for plaintiff to proceed under the indirect evidence framework. For purposes of this opinion, therefore, defen-

dant's arguments will be analyzed under both the direct and indirect evidence framework.

I note, however, that plaintiff has direct evidence of intentional discrimination based on disability. In its Responses to Plaintiff's First Set of Interrogatories, defendant was asked to name the event or change in circumstances that caused plaintiff's transfer from full-time, modified carrier to part-time, flexible clerk. Defendant stated, " . . . Plaintiff's restrictions were determined to be permanent and such restrictions would not allow her to perform the essential functions of her letter carrier job." (Doc. 37 at 4). Defendant further stated, "[I]f plaintiff would have been able to perform the essential functions of the letter carrier position, there would have been no reason to make this transfer." (Doc. 37. at 6).

Direct evidence of intentional discrimination can include "evidence that the employer relied on the plaintiff's disability in making its employment decision." *Hopkins,* 196 F.3d at 660. Because defendant stated in its Responses that its reason for transferring plaintiff was her restrictions on working, defendant relied on plaintiff's disability in making its employment decision.

Furthermore, plaintiff demonstrated sufficient animus constituting direct evidence that plaintiff's transfer may have been motivated by her disability. For example, plaintiff was suspended for seven and fourteen days for missing work due to injuries and therapy. Plaintiff's supervisor "verbally abused" plaintiff for scheduling therapy during work hours and accused plaintiff of "milking" her injury. On receiving an order from plaintiff's doctor

### 1. Otherwise Qualified for the Job With or Without a Reasonable Accommodation

In both direct evidence and indirect evidence cases, the plaintiff needs to prove he or she is a person who is otherwise qualified for the job. *Monette*, 90 F.3d at 1186.

■ A person otherwise qualified for the job is a person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of herself or others. 29 C.F.R. § 1614.203(a)(6). Defendant argues plaintiff is unqualified for the job because plaintiff admitted she could not work as a full-time carrier due to her injuries. Plaintiff argues she is qualified for the job of a modified carrier position, the position she worked in for almost four years after her accident. The determinative issue is, therefore, whether the "position in question" is the full-time carrier position or the modified carrier position.[7]

Courts have examined the issue of whether the "position in question" is the employee's original position or the employee's subsequent light duty position. Several courts have concluded that the "position in question" must be the employee's light duty position. *See Woodman v. Runyon*, 132 F.3d 1330 (10th Cir.1997); *Florence v. Runyon*, 990 F.Supp. 485 (N.D.Tex.1997); *Karnes v. Runyon*, 912

F.Supp. 280 (S.D.Ohio 1995); *Valdez v. Albuquerque Pub. Sch.*, 875 F.Supp. 740, 745 (D.N.M.1994) ("Indeed, under that construction the employer would be able to engage in egregious discriminatory conduct without sanction while the employee was assigned to light duty functions, 'simply because the employee was not "qualified" for a position that had nothing to do with his current work.'") (citation omitted); *Taylor v. Garrett*, 820 F.Supp. 933, 939 (E.D.Pa.1993) ("If one were to accept the Navy's rigid definition of the 'position in question,' an employer who chose to reassign to light-duty work an employee who had become unable to perform his original job would have an unsettling 'carte blanche' power over that employee.").

In *Karnes v. Runyon*, 912 F.Supp. 280, 282 (S.D.Ohio 1995), the plaintiff was diagnosed with bi-lateral cubital tunnel syndrome which prevented her from working in her original position as Keyer clerk. Defendant USPS originally accommodated the plaintiff with a position that required no repetitive movement. *Id.* When she returned to work following maternity leave, however, USPS informed her that USPS could not provide her with a position fitting her restrictions. *Id.* When she later returned to work, USPS created a new position for her that fit her work restrictions. *Id.*

---

requiring plaintiff to remain at home for one week, defendant contacted plaintiff's doctor to persuade the doctor to change his order. Plaintiff's supervisor told her that plaintiff "needed to get better quick, because they just didn't know if they had any use for an injured carrier in their office." Plaintiff was ordered to carry a forty pound mail bag on her shoulder and told "injured or not, [plaintiff] had better do the entire days [sic] work, without help or not bother coming back." (Doc. 1 at 4–5).

These statements and conduct are direct evidence that plaintiff's transfer may have

been motivated by her disability. *See, e.g., Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995) ("[P]laintiff presented evidence that both [managers] had made racist comments which constitute direct evidence that plaintiff's termination may have been racially motivated."). Plaintiff, therefore, has direct evidence of intentional discrimination based on disability.

**7.** Defendant does not dispute whether plaintiff's suggested accommodation of continuing to work as a modified carrier was reasonable.

USPS argued that the "position in question" for Rehabilitation Act analysis was the plaintiff's original Keyer clerk position. *Id.* at 286. The court, however, found "the position Ms. Karnes held at the time of the alleged discrimination is more appropriate for determination whether she 'can perform the essential functions of the job in question.'" *Id.* Because USPS did not challenge whether the plaintiff could perform the essential functions of the job she held under her work restrictions, USPS could not show she was not otherwise qualified. *Id.*

In *Woodman v. Runyon,* 132 F.3d 1330, 1334 (10th Cir.1997), the plaintiff was diagnosed with conditions which prevented her from working in her original position in the General Mailing Facility of the USPS. Following surgery, the plaintiff was assigned to several different jobs in order to meet her work restrictions, including a limited duty job in the mail processing center, a temporary limited duty job in consumer affairs, a permanent in-service rehabilitation assignment as a general clerk, and the limited duty job in consumer affairs again. *Id.* at 1335–36.

The court refused to interpret the "position in question" as the original position because such interpretation would contradict the employer's obligation to reassign an employee to a vacant position under 29 C.F.R. § 1614.203(g). *Id.* at 1340. The court stated,

> To interpret "position in question" to refer only to plaintiff's qualifications for the original position, then, would render § 1614.203(g) meaningless. Requiring that plaintiffs demonstrate they are capable of performing their original job would disqualify the very individuals the regulation is intended to benefit. We think it obvious that "position in question" cannot be read so narrowly and

remain consistent with the reassignment requirement.
*Id.*

In *Florence v. Runyon,* 990 F.Supp. 485, 488 (N.D.Tex.1997), the plaintiff began working for USPS as a letter carrier and suffered an on-the-job back injury in a car accident. USPS gave the plaintiff a limited duty assignment, but he thereafter was transferred to another USPS station against his will. *Id.* Later, USPS transferred him back to his modified job assignment at his original post office station. *Id.*

After a lengthy discussion of cases addressing whether an original or light duty position should be used as the "position in question," the court determined the use of the light duty position was appropriate. *Id.* at 492–93. The court found several factors to be influential: 1) at the time of the alleged discriminatory act, the plaintiff was working in the limited duty position, 2) the limited duty position was offered to him in accordance with the Department of Labor's policies for the USPS, and 3) the limited duty position was not a short-term, informally created position. *Id.* at 493.

Those courts that, in contrast, have deemed the employee's original position as the "position in question" have done so because the employee's subsequent light duty position was only temporary, the employee was not assigned to light duty at the time of the alleged discrimination, or the essential functions of the original position apply to all employee positions. *See Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 697 (7th Cir.1998) ("[T]he plaintiffs in those cases were assigned to *permanent* 'light-duty' assignments, whereas Malabarba's 'light-duty' work assignment as a material handler was only temporary.... The relevant question before us is whether he had the ability to perform the essential functions of [his original position], with or without accommodation.")

(emphasis in original); *Hill v. Harper,* 6 F.Supp.2d 540, 543 (E.D.Va.1998) ("In the instant case, however, Sheriff Harper maintains that there were no permanent 'light duty' positions at the jail.... Thus, for purposes of this case, the relevant inquiry is whether Hill was qualified to perform the 'essential functions' of [his original position]."); *McCollough v. Atlanta Beverage Co.,* 929 F.Supp. 1489, 1502–03 (N.D.Ga.1996) ("Finding no issue of fact on this question, the Court concludes that plaintiff has not demonstrated that he was in a light duty position when he was terminated. The Court need not consider, therefore, the question of whether plaintiff was qualified for such a light-duty position."); *Champ v. Baltimore County,* 884 F.Supp. 991, 998 n. 3 (D.Md.1995) ("In contrast, the defendants have maintained throughout this case that the essential functions of a police officer apply with equal force to all positions held by a police officer in the police department."); *see also Clark v. Central Cartage Co.,* 73 F.3d 361, 1995 WL 758459 *4, 1995 U.S.App. LEXIS 38820, at *8 n. 2 (6th Cir. Dec. 21, 1995) ("In the case at bar, the evidence clearly shows that the modified work program was temporary only. Moreover, there is no evidence of any permanent reassignment policy in this case.").

The rationales of *Karnes, Woodman,* and *Florence* are persuasive, particularly because the grounds on which other courts distinguished those cases do not apply here. Plaintiff's modified carrier position, having lasted for nearly four years, was not temporary. (Doc. 33 at 12). USPS does not argue that the essential functions of the regular carrier position apply to all jobs throughout the postal service. Finally, plaintiff was in the modified carrier position at the time of the alleged discrimination. (Doc. 33 at 10 ("Prior to her demotion, Nighswander had successfully performed the duties of the modified carrier position for nearly four years.")). The "position in question" for the purposes of the second prong of plaintiff's prima facie case, therefore, must be plaintiff's modified carrier position.

The issue then becomes whether plaintiff is a person who, with or without reasonable accommodation, could perform the essential functions of the modified carrier position without endangering the health and safety of herself or others. In its motion to dismiss or for summary judgment, defendant bases its entire argument on plaintiff's lack of qualifications for the original full-time regular carrier position, without addressing whether plaintiff could perform the essential functions of the modified carrier position. Because defendant fails to dispute whether plaintiff could perform the essential functions of the modified carrier position, there is no basis for finding plaintiff could not perform those functions.

Because defendant only disputes the "otherwise qualified" prong of plaintiff's prima facie case for disability discrimination based on direct evidence, plaintiff's claim for disability discrimination based on direct evidence, therefore, survives defendant's motion to dismiss or for summary judgment. Defendant's motion shall be denied as to plaintiff's claim for disability discrimination based on direct evidence.

### 2. Treatment of Similarly Situated Persons not in the Protected Class

In indirect evidence cases, the plaintiff needs to prove that similarly situated persons not in the protected class were treated more favorably. *Hopkins v. Electronic Data Sys. Corp.,* 196 F.3d 655, 660 (6th Cir.1999). To demonstrate that a person is similarly situated, "the plaintiff [is] simply 'required to prove that all of the *relevant* aspects of his employment situation [are] "nearly identical" to those of [the non-minority's] employment situation.'" *Ercegovich v. Goodyear Tire & Rubber*

Co., 154 F.3d 344, 352 (6th Cir.1998) (emphasis and third alteration in original) (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994)); *see also Moody v. Blue Cross/Blue Shield,* 993 F.Supp. 1078, 1083 (W.D.Mich.1998) (" 'The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.' ") (quoting *Pierce,* 40 F.3d at 802). In *Ercegovich,* 154 F.3d at 352, the court stated, "Courts ... should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." To demonstrate the plaintiff is similarly situated to an employee receiving more favorable treatment, the plaintiff does not have to establish an exact correlation. *Id.*

Defendant argues plaintiff failed to establish that similarly situated employees were treated differently. Defendant contends that plaintiff's named similarly situated employees, Russell Gase and Penny Spears, are inappropriate comparisons. Defendant first argues that because Russell Gase also is disabled, he is an inappropriate comparison. Defendant then argues that Penny Spears is an inappropriate comparison because Spears held a supervisory position and plaintiff did not hold a supervisory position.

■ Setting aside the issue of whether Gase and Spears are similarly situated, Plaintiff's evidence that similarly situated persons not in the protected class were treated more favorably is not limited to the experiences of Gase and Spears. Plaintiff's brief states, "Defendant admits that none of the non-disabled, Tiffin carriers, at or about the same seniority level as Nighswander, have been involuntarily transferred to a part-time flexible clerk position." (Doc. 33 at 15 (citing Doc. 37 at 43–47)). Plaintiff further argues, "Involuntary reassignment of non-disabled carriers, with the same seniority as Nighswander, would be in violation of the [collective bargaining agreement] and as such, never occurs." (Doc. 1 at 8). These statements show a material issue of fact as to whether similarly situated persons not in the protected class were treated more favorably. This court does not need to consider whether Gase and Spears are similarly situated because plaintiff's statements suffice to create an issue of fact for trial.

Plaintiff's claim for disability discrimination based on indirect evidence, therefore, survives defendant's motion to dismiss or for summary judgment. Defendant's motion to dismiss or for summary judgment on plaintiff's Rehabilitation Act claims shall be, therefore, denied.

## B. Prima Facie Case of Discrimination for Failure to Accommodate

■ A plaintiff's prima facie case for a claim of discrimination based on failure to accommodate requires the plaintiff to show: 1) he or she is an individual with a handicap as defined in 29 C.F.R. § 1614.203(a)(1); 2) he or she is qualified for the position as discussed in 29 C.F.R. § 1614.203(a)(6);[8] 3) the agency was aware of his or her disability; 4) an accommodation was needed; and 5) the agency failed to provide the necessary accommodation.[9] *Gaines v. Runyon,* 107 F.3d 1171,

**8.** This court has previously determined that defendant is not entitled to dismissal or summary judgment on this issue. *See supra* Part I.A.1.

**9.** Because defendant has not disputed whether plaintiff is an individual with a disability,

whether the defendant was aware of plaintiff's disability, or whether an accommodation was needed, the defendant's only remaining argument is whether it failed to provide the necessary accommodation.

1175 (6th Cir.1997) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882–83 (6th Cir.1996)). The plaintiff bears the initial burden of suggesting an accommodation and showing that the accommodation is objectively reasonable. *Monette*, 90 F.3d at 1183.

As noted, defendant does not dispute whether plaintiff's suggested accommodation of remaining in the modified carrier position is reasonable, defendant only argues that it provided plaintiff with a reasonable accommodation in the modified part-time flexible clerk position.

### 1. The Necessary Accommodation

■ The factors used in determining whether an accommodation is reasonable include: "(1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir.1998) (citing 29 C.F.R. app. § 1630.9(a)). If multiple reasonable accommodations exist, the employer is given discretion to choose between them. *Hankins v. Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir.1996) ("As the Supreme Court has held in analogous circumstances, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.") (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)); *see also Keever*, 145 F.3d at 813 ("Similarly, we conclude that the desk job offered to Keever was a reasonable accommodation, although it did not provide him with his *preferred* accommoda-

tion.") (emphasis in original); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1016 (7th Cir.1996) ("ADA does not obligate an employer to provide a disabled employee every accommodation on his wish list.").

■ Types of reasonable accommodations include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *see also Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 728 (6th Cir.2000).[10] An employer should reassign an employee " 'only when accommodation within the individual's current position would pose an undue hardship.' " *Pattison v. Meijer, Inc.*, 897 F.Supp. 1002, 1007 (W.D.Mich.1995) (citing 29 C.F.R. § 1630.2(o)). If an employer finds reassignment necessary, the employer first should attempt to reassign an employee to an equivalent position in terms of pay, status, and benefits if the employee is qualified for the equivalent position and the position is vacant within a reasonable amount of time. *Hoskins*, 227 F.3d at 728 n. 3. An employer "should only reassign an individual to a lower graded position if the individual cannot be accommodated in an equivalent position." *Id.* (citing 29 C.F.R. § 1630.2(o)); *see also Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999) ("Reassignment does not constitute reasonable accommodation ... where a position comparable to the employee's former placement is available, but the employee instead is assigned to a position that would involve a significant diminution in salary, benefits, seniority or other advantages that she possessed in her former job.").

---

**10.** In *Robinson v. Runyon*, 987 F.Supp. 620, 622 (N.D.Ohio 1997) (citing 29 U.S.C. 794(d)), this court stated, "Before 1992, employers were not required to reassign employees to suitable positions under the Rehabilita- tion Act. However, Congress amended the Act to provide that the standards of the Americans with Disabilities Act (ADA), under which reassignment was an option, applied in the Rehabilitation Act context."

■ These cases, read together, mean that an employer has, in the first instance, discretion to choose from among various reasonable accommodations. Reassignment, however, is reasonable only when continued accommodation in the employee's current position would be an undue hardship for the employer. In circumstances where accommodation in the current position is an undue hardship, the employer first must, in any event, attempt to reassign the employee to an equivalent position.

■ Defendant argues plaintiff's reassignment from modified carrier to modified part-time flexible clerk was a reasonable accommodation. I disagree.

To reassign plaintiff lawfully to a modified part-time flexible clerk position, defendant must show that accommodating plaintiff in her modified carrier position was an undue hardship. Defendant has presented no evidence showing that accommodating plaintiff's disability by allowing her to remain in her modified carrier position was an undue hardship for defendant. Defendant simply states the clerk reassignment was a reasonable accommodation and defendant is not required to provide a specific accommodation when another reasonable accommodation is available.

■ An employer can reassign an employee in order reasonably to accommodate that employee's disability but the employer must not reassign the employee arbitrarily. *See e.g., Valdez v. Albuquerque Pub. Sch.,* 875 F.Supp. 740, 746–47 (D.N.M.1994) ("While I agree that an employer has 'ultimate discretion to choose between effective accommodations, . . .' an employer's discretion to implement alternative means of accommodation cannot, as APS appears to contend, be unfettered. Rather, that discretion must be tempered by the ADA's command that an employer shall not discriminate.").The EEOC Interpretive Guidance to ADA Title I states,

"Reassignment may not be used to limit, segregate, or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions or to designated offices or facilities." 29 C.F.R. § 1630.2(*o*).

An employer may reassign an already accommodated employee only where continued accommodation in the current position creates an undue hardship. Because defendant fails to argue that accommodating plaintiff in her modified carrier position was an undue hardship, there is no basis for finding that reassignment to a modified part-time flexible clerk was a reasonable accommodation.

Defendant, furthermore, fails to present evidence showing that it tried to accommodate plaintiff by attempting first to reassign plaintiff to an equivalent position. Plaintiff argues the modified part-time flexible clerk position "would result in a loss of benefits (no paid holidays), loss of seniority within the carrier craft, and a change of work schedule from five days a week, eight hours a day, to six days a week with no guarantee of forty hours per week" and, therefore, is not an equivalent position. (Doc. 33 at 3). Defendant does not argue either that the modified part-time flexible clerk position is equivalent to the modified carrier position or that it tried to reassign plaintiff to the equivalent of a modified carrier position. There is, therefore, no basis for finding reassignment to the modified part-time flexible clerk position was a reasonable accommodation.

Plaintiff's claim for disability discrimination based on a failure to accommodate survives defendant's motion to dismiss or for summary judgment.

## II. Count III: Violation of the National Labor Relations Act

Plaintiff alleges defendants violated the National Labor Relations Act, 29 U.S.C.

§ 185, by demoting plaintiff and thereby violating the collective bargaining agreement. Defendant contends this claim must be dismissed because it is beyond the statute of limitations. Plaintiff fails to oppose this contention. Plaintiff's claim under the National Labor Relations Act shall be, therefore, dismissed.

■ Defendant's argument, furthermore, is well-taken. Claims brought under the Postal Reorganization Act, 39 U.S.C. § 1208(b), are subject to a six-month statute of limitations. *Kroll v. United States*, 832 F.Supp. 199, 204 n. 1 (E.D.Mich.1993) ("In addition, plaintiff's claim would fail under 39 U.S.C. § 1208(b) because plaintiff has failed to comply with the six-month statute of limitations period for filing unfair labor practice charges in actions by an employee against its employer for breach of a collective-bargaining agreement." (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983))). Plaintiff claims that improper labor relations conduct occurred in 1997, and plaintiff filed this complaint on January 2, 2001. Her complaint is outside the six-month statute of limitations.

### III. Count IV: Handicap Discrimination Under O.R.C. § 4112

Plaintiff's complaint states defendant USPS discriminated against her on the basis of handicap under O.R.C. § 4112. Defendant argues this claim must be dismissed because "[t]he federal Rehabilitation Act is the exclusive remedy for a federal claim of disability discrimination." (Doc. 21 at 5). Plaintiff fails to oppose this argument. Plaintiff's claim under § 4112 shall be, therefore, dismissed.

■ Defendant's argument, furthermore, is well-taken. The sole remedy for a federal claim of disability discrimination is under the federal Rehabilitation Act.

*Felder v. Runyon*, Case No. 00–1001, 2000 WL 1478145, *1, 2000 U.S.App. LEXIS 24832, at *3 (6th Cir. Sept. 26, 2000) ("We also construe Felder's complaint as being filed solely pursuant to the Rehabilitation Act as the Act is the exclusive means for a federal employee to bring a claim of disability discrimination in federal court."). Because plaintiff was a federal postal employee, plaintiff's only remedy for disability discrimination is under the federal Rehabilitation Act.

### IV. Count V: Infliction of Emotional Distress

Plaintiff's complaint alleges infliction of emotion distress. Defendant argues this claim must be dismissed because the claim was never presented to the appropriate federal agency as required under the Federal Tort Claims Act, 28 U.S.C. § 2671. Plaintiff fails to oppose this argument. Plaintiff's claim for infliction of emotional distress shall be, therefore, dismissed.

■ Defendant's argument, furthermore, is well-taken. Title 28 United States Code § 2675(a) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

The requirements of administrative review and compliance with the claim procedure cannot be waived. *McNeil v. United States*, 508 U.S. 106, 111, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The command that an 'action shall not be instituted . . . unless

the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail' is unambiguous.") (alteration in original); *Garrett v. United States*, 640 F.2d 24, 25 (6th Cir.1981). This court lacks jurisdiction regarding plaintiff's infliction of emotional distress claim because plaintiff failed to file an administrative claim.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendant's motion to dismiss or motion for summary judgment on counts I and II be, and hereby is, denied; and

2. Defendant's motion to dismiss or motion for summary judgment on counts III, IV, and V, be, and hereby is, granted.

**So ordered.**